JOSEPH HOCKSTEIN AND LENA HOCKSTEIN, PLAINTIFFS, v. STANLEY-FABIAN CORPORATION, STANLEY COMPANY OF AMERICA, INCORPORATED, AND WARNER BROTHERS THEATRES CORPORATIONS, DEFENDANTS.

Decided November 20, 1931.

1244

For the plaintiffs, *Brenner & Kresch.*

For the defendants, *Edward M. & Runyon Colie.*

ACKERSON, S. C. C. This action is based upon a lease of the Strand Theatre in the city of Bayonne, made by the plaintiffs, Joseph Hockstein and Lena Hockstein, to Liberty Amusement Company dated August 13th, 1920, and by that company assigned to the Stanley-Fabian Corporation. By stipulation a copy of said lease and a copy of the assignment thereof as annexed to the notice of this motion are made a. part of the complaint herein.

The complaint is in five counts and each count alleges that the Stanley-Fabian Corporation merged with the Stanley Company of America, Incorporated, which in turn merged with the Warner Brothers Theatres Corporation, and recovery is sought against these companies in the alternative.

The Stanley-Fabian Corporation has filed an answer with a counter-claim attached and the plaintiffs now move to strike out this answer to each count of the complaint upon the ground that it is frivolous and sets forth no legal defense, and to strike out the counter-claim upon the ground that it does not set forth a cause of action.

The first count of the complaint seeks to recover the difference between a rental of $1,250 per month and $1,333.33 per month for the period from March 1st, 1930, to the date of suit. The lease in question is for a term of eleven years from September 1st, 1920, and the rental is fixed at $15,000

per annum, payable in monthly installments of $1,250, with the following condition:

"That if and when the party of the second part, its successors or assigns, will raise the price of admission to the Strand Theatre from its present scale to a scale which will require the payment of at least thirty-five (35c.) cents for a seat or seats in the orchestra then and in that event the annual rent to be paid by the party of the second part shall be at the rate of sixteen thousand ($16,000) dollars, payable in monthly installments of thirteen hundred thirty-three ($1,333.33) dollars and thirty-three cents, on the first of the month, which will be the increase in the price of admission as hereinabove designated, until the end of the eleven-year term, for which this agreement is made."

The first count further alleges that the price of admission to the theatre was increased by the defendants to or beyond thirty-five (35c.) cents for orchestra seats, and the increased rental of $16,000 per year was thereafter paid in monthly installments of $1,333.33 until March 1st, 1930, at which time defendants attempted to reduce the monthly rental to $1,250, which was refused but later accepted upon an agreement with the defendants that it would not be considered a waiver of the additional amount of $83.33 per month, nor of the plaintiffs' right to sue for and collect said additional amount should it be determined by a court of competent jurisdiction upon considering the terms of the lease that plaintiffs were entitled thereto.

The answer of the defendant Stanley-Fabian Corporation to the count admits the payments of rental as set forth in the first count of the complaint, and that the price of admission to the theatre was, for a limited period, increased to beyond the amount of thirty-five (35c.) cents for the orchestra seats and that thereupon the increased rental provided for in the above-quoted paragraph of the lease was paid by said defendants, but asserts that subsequently and on or about August 1st, 1927, said Strand Theatre was closed and has since remained closed, and since that date there have been no seats for the orchestra in said theatre sold either

at thirty-five (35c.) cents a seat or at any other price, and it is contended that under the above-quoted paragraph of the lease, the monthly rental should be reduced to the original amount of $1,250 for the balance of the term of said lease.

The exact point to be decided is whether, after having increased the price of admission to the theatre to a scale which required the payment of an increase in rent of $83.33 per month, which is admitted, the subsequent closing of the theatre, and nonsale of seats for the balance of the term of the lease would automatically reduce the rental to the original sum of $1,250 per month for that period.

It seems to me that there is no ambiguity concerning this subject in the lease. The pertinent part of the above-quoted clause, after stating that in the event of an increase in the price scale for orchestra seats to at least thirty-five (35c.) cents for orchestra seats goes on to provide that, "the annual rent to be paid by the party of the second part shall be at the rate of sixteen thousand ($16,000) dollars payable in monthly installments of thirteen hundred thirty-three ($1,333.33) dollars and thirty-three cents * * * *which will be the increase in the price of admission as hereinabove designated, until the end of the eleven-year term, for which this agreement is made."*

It is to be noted that nothing whatever is said about a reduction in the increased rental in the event of the price scale being reduced or the theatre being closed. On the contrary we find it provided that in the event of a certain increase in the price scale for orchestra seats, that it "will be the increase in the price of admission as hereinabove designated until the end of the eleven-year term." The last quoted clause of the agreement evidently was inserted to serve some useful purpose. It was either intended to prevent a reduction in the price scale once it had been advanced, so as to maintain the standard of the theatre, or it was intended to show that the increased rental once fixed was not to be reduced. In either event the increased rental would continue to the end of the term.

In any event there is nothing whatever in the answer sug-

gesting that the defendant reduced the price scale for orchestra seats below thirty-five (35c.) cents after having made the increase. The only allegation upon the subject is that on August 1st, 1927, the theatre was closed and has since remained closed, and that since said date there have been no seats sold at any price. This is quite different from reducing the price scale of such seats. If defendants' contention is correct, then there is no reason why any rental at all should be paid for the remainder of the term after the closing of the theatre, because there is no provision whatever in the lease suggesting that the closing of the theatre or the discontinuance of the sale of tickets would have any effect upon the payment of the rental. The landlords could not curtail the term of the lease without the lessee's consent, and by the same token the lessees could not escape paying rental whether the theatre was closed or not. This defendant suggests that by adding certain words to the clause "which will be the increase on the price of admission as hereinabove designated, until the end of the eleven-year term, for which this agreement is made," the meaning will be made in harmony with the defendant's contention. The suggestion is that the words "for the period during" be inserted before the word "which" and that the word "there" be added after the word "which." The latter end of the whole clause would then read as follows: "Then and in that event the annual rent to be paid by the party of the second part shall be at the rate of sixteen thousand ($16,000) dollars, payable in monthly installments of thirteen hundred thirty-three ($1,333.33) dollars and thirty-three cents on the first day of the month *for the period during* which *there* will be the increase in the price of admission as hereinabove designated, until the end of the eleven-year term, for which this agreement is made."

This, of course, is a greatly forced suggestion. In the first place the clause is not ambiguous as it stands, and we cannot add anything thereto, much less make a new agreement for the parties. In the second place if we add these words, then the end of the clause reading "until the end of the eleven-year term for which this agreement is made," is unnecessary and useless.

Enough has been said to show that a proper construction of the criticized clause leads to the conclusion that the plaintiffs are entitled to the increased rental for the balance of the term of the lease, and that defendant's answer to the first count, including the separate defense, is frivolous and must be stricken out.

The second count alleges that under the terms of the lease in question, the lessee (defendant's assignor) agreed to pay the taxes and water rents assessed against the Strand Theatre building, together with the land upon which it is erected, during the term of the lease, and that same were paid until January 1st, 1929, after which neither of the defendants paid any of said taxes or water rents, whereupon the plaintiffs, as owners of the leased premises paid or became obligated to pay said taxes and water rents for the years 1929, 1930 and 1931.

The defendant Stanley-Fabian Corporation, answering this second count of the complaint, admits that the taxes for 1928 were paid by it, but insists that the tax bill included taxes on other property of plaintiffs not included in the lease held by the defendant, and denies that there is due and owing to the plaintiffs the amount of the taxes and water rents for 1929, 1930 and 1931 as claimed in the complaint. Plaintiffs now move to strike out this answer to the second count as frivolous.

A frivolous answer is one which on its face sets up no defense, although it may be true in fact. *Fidelity Mutual Life Insurance Co.* v. *Wilkes-Barre and H. R. Co.*, 98 N. J. L. 507. It is apparent that the denial in the answer that there is anything due and owing to the plaintiffs sets up a good defense although it may not be true in fact, and so this answer cannot be stricken out as frivolous.

I am unwilling, however, to pass on without noticing the real question which the parties desired to present for decision. The lease describes the property demised as follows: "All that certain theatre building in the city of Bayonne, county of Hudson and State of New Jersey, known as the Strand

Theatre, located at No. 511 Broadway, with the furniture, scenery and appurtenances, reserving * * * unto the said parties of the first part" (plaintiffs) "the premises in the rear of the theatre building, and reserving also unto the parties of the first part the stores and front basement of the said premises, with the right to build additional stores or offices above the stores now located on the ground floor of the premises."

The paragraph providing for the payment of rental reads as follows: "That the party of the second part in addition to paying the rent hereinabove provided for, will also pay the taxes and water rents charged by the city of Bayonne for the Strand Theatre building together with the land upon which it is erected, during the term of this agreement."

It appears that the taxes and water rents for 1929, 1930 and 1931 were assessed against all the premises originally known as the Strand Theatre property as one item and in one bill including the part thereof reserved in the lease to the lessors, viz., the lot in the rear and the stores in the front. The plaintiffs insist that under the foregoing provisions of the lease this defendant, as assignee thereof, is obliged to pay the entire tax bill on the entire property, including the part thereof reserved to the lessors as aforesaid.

A moment's reflection, however, will show that this contention is not sound. It would be most unnatural for a lessee, in addition to paying rent for the demised premises to agree to pay taxes and water rents assessed against premises retained by the lessor. If such were the agreement we would expect to find it explicitly stated, and there is no such statement in the lease in question. This thought is emphasized by the fact that the lease expressly provides that the lessee shall furnish steam heat when necessary to the stores reserved to the lessors in front of the theatre building at the lessee's expense; and in contemplation that additional floors may be added above these stores, under permission given in the lease, it is further provided that the lessors may have the privilege of connecting same with the heating apparatus of

the building, the lessee agreeing to supply heat for same upon the lessors paying a share of the total cost of heating proportionate to the radiation installed on such additional floors. Furthermore there is a very explicit statement in the lease providing for the lessee paying any increase in insurance rates, up to a certain amount, due to its operations.

Since such care was taken in these instances to provide for payments not falling naturally under the ordinary terms of a lease, it is but natural to suppose that the parties would have been equally explicit if they had intended the lessee to be bound to such an unnatural obligation as to pay taxes and water rents assessed or levied against premises not included in the demise and over which it had no control.

The answer to the second count must, therefore, stand.

At the argument of this motion it was conceded that the answer to the third and fourth counts of the complaint were not frivolous but properly raised questions of fact which would have to be submitted to a jury, and the application to strike them out as frivolous was withdrawn.

Turning now to the counter-claim, we find that it seeks to recover from the plaintiffs that porportion of the 1928 taxes represented by the valuation of the taxed property not covered by the lease in question, and which taxes were paid by the defendant under the belief that the premises taxed consisted only of the property covered by the lease.

Having already found that the defendant is not liable under the terms of the lease for the taxes and water rents assessed or levied against that portion of the premises reserved to the lessors, the question remains whether the defendant can recover from the plaintiffs, as lessors, such proportion of the 1928 taxes as represent the tax assessed on the property not demised.

It is, of course, elementary that a voluntary payment for the benefit of another cannot be recovered at law, or ordinarily in equity, unless that other has subsequently ratified such payment; nor is the rule affected by the fact that the person for whose benefit the payment was made accepted the

benefits of such payment, if he could not help doing so. 41 *C. J.* 12, § 13. But it has also been held upon good authority that recovery may be had of a due proportion of money paid for taxes by one of two owners or tenants of different parts of a parcel of realty against which such taxes were assessed as a whole. *Ibid.* 16, § 10 (2) ; *Graham* v. *Dunigan,* 4 *Abb. Pr.* 426; *Iron City Tool Works* v. *Lang,* 4 *Pa.* 57; 7 *Atl. Rep.* 82.

And so it seems to me that where a lessee is obligated to pay taxes assessed against the demised property, forming part of a larger tract, retained by the lessor, where the whole tract has been habitually assessed as a whole under one valuation and as one item, and the lessor has not had a severance made for the purpose of future taxation upon the tax schedules, that it is but reasonable to hold that an implied promise arises under such circumstances, to reimburse the lessee if he has paid the bill, assessed upon the tract as a whole. The fact that the lessor has permitted the property to be assessed and taxed as a whole, and has not applied for a severance before the taxes became due, certainly raises an implication that he will pay his proportion of the taxes so assessed, in protection of the property demised, and failure to do so in the first instance will reimburse his lessee or assigns who have been thus put in the position of making such payment.

In view of what has been said it seems to me that the counter-claim cannot be stricken as frivolous.

The motion, in so far as it seeks to strike out the answer and defense to the first count of the complaint, is granted, but in so far as it seeks to strike out the answer to the other counts and the counter-claim, it is denied. No costs will be allowed.